(No. 73970.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. WILLIAM T. JONES, Appellant.

*Opinion filed May 20, 1993.*

358

Howard B. Eisenberg, of Little Rock, Arkansas, for appellant.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Terence M. Madsen and Michael M. Glick, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

The defendant, William T. Jones, was convicted, in the circuit court of Jefferson County, of murder, attempted murder, armed robbery, residential burglary, and aggravated battery. The defendant waived his right to a jury for purposes of sentencing, and the trial court found the defendant eligible for the death penalty. After hearing evidence in aggravation and mitigation, the trial court sentenced the defendant to death.

Defendant's convictions were affirmed on direct appeal in *People v. Jones* (1988), 123 Ill. 2d 387. Thereafter, the United States Supreme Court denied review of defendant's direct appeal. (*Jones v. Illinois* (1989), 489 U.S. 1040, 103 L. Ed. 2d 236, 109 S. Ct. 1174.) On July 19, 1989, defendant filed a *pro se* petition for post-conviction relief. An attorney was appointed to represent defendant in the post-conviction proceedings, and on January 10, 1991, an amended petition for post-convic-

tion relief was filed. The State filed a motion to dismiss the post-conviction petition. After hearing arguments on the petition, but without conducting an evidentiary hearing, the petition was dismissed. This court has jurisdiction over the instant appeal pursuant to Supreme Court Rule 651(a). 134 Ill. 2d R. 651(a).

On appeal, the defendant argues that Circuit Judge Terence J. Hopkins, who presided over both defendant's trial and the post-conviction petition, erred in denying defendant's petition for post-conviction relief without conducting an evidentiary hearing. The defendant's post-conviction petition alleged that he had received ineffective assistance of counsel and that the Illinois death penalty statute is unconstitutional. More specifically, the defendant's petition contained the following allegations: (1) defendant's trial counsel failed to investigate the competency of James Dare, a witness for the State, and failed to object to his testimony; (2) trial counsel failed to object to the coaching of James Dare during his testimony; (3) trial counsel failed to investigate the identity of the State's informant, and failed to object to the admission of certain forensic evidence; (4) there was a possibility that the jury had been harassed, and a hearing was necessary to determine if such harassment had taken place; (5) the trial court improperly denied defendant's motion for copies of certain laboratory notes; and (6) the Illinois death penalty statute is unconstitutional.

The facts of this case are adequately set forth in this court's opinion on the defendant's direct appeal (*People v. Jones* (1988), 123 Ill. 2d 387) and will be repeated here only where necessary. On January 26, 1982, Margaret Dare was found dead and her husband, James Dare, was found severely injured in the living room of their home near Dix, Illinois. Bloodstains were visible throughout much of the house, and a number of items, including a television set and a stereo phonograph, were missing.

At trial, defendant's wife, Dorothy Jones, testified that on January 25, 1982, the defendant left the house around 8 p.m. and returned sometime after 10 o'clock. He went upstairs, and she heard water running in the bathroom. Defendant left the house again about 10 to 15 minutes later, explaining that he was going to see some friends. It was not until 5 o'clock the following morning that defendant called home to tell his wife that he was in Decatur visiting his sister. Mrs. Jones also testified that in February 1982, she found a bloodstained stocking cap tucked in her lingerie drawer, and she noticed that the defendant's jacket, which was hanging in their closet, had bloodstains on it.

Additional testimony at trial was that the defendant and two friends drove to Decatur during the early morning hours of January 26, 1982. After arriving at defendant's sister's apartment, a television set and stereo components were unloaded from the back seat of the car and taken into the apartment. The television and stereo had blood on them and they were cleaned off. Later that day, defendant received $55 from the sale of the television at a Decatur auction house.

The State presented evidence of a burglary and theft that occurred during the evening of January 23, 1982, at the home of Dorothy Lacey, located near Mt. Vernon. Mrs. Lacey testified that a number of things were missing from her home following the break-in. Jewelry and a quilt had been found in a search of defendant's car on January 27, and at trial Mrs. Lacey identified these items as having been taken from her home. Additionally, following the murder of Mrs. Dare and the attempted murder of Mr. Dare, a large butcher knife belonging to Mrs. Lacey was discovered in the Dares' kitchen sink.

Forensic tests proved that the defendant's blood type was consistent with the blood type found on the Dares'

front porch, and on a number of items inside the house. Additionally, defendant's blood type is different from Mr. and Mrs. Dare's blood types and the blood types of defendant's friends.

Defendant claimed that he spent the evening of January 25, 1982, at a local restaurant and left only once to go home to change his shoes. Additionally, defendant testified that the stereo and television were placed in his car by one of his friends stating that they could sell these items in Decatur in order to obtain enough money to drive back home. According to the defendant, the blood came to be on the television and stereo after defendant fell and reopened a cut on his finger prior to unloading these items from the back seat of his car.

In ruling on the post-conviction petition, the trial court stated that the defendant had failed to show that he was prejudiced by the alleged errors of trial counsel. Additionally, the trial court concluded that none of the issues raised in the post-conviction petition were supported by the record and they lacked sufficient substance to merit an evidentiary hearing under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1989, ch. 38, par. 122—1 *et seq.*). We find that the trial court's denial of the defendant's post-conviction petition, without conducting an evidentiary hearing, is amply supported by the instant record and Illinois law, and accordingly, we affirm.

## POST-CONVICTION HEARING ACT

At a hearing under the Post-Conviction Hearing Act, the burden is on the defendant to establish a substantial deprivation of rights under the United States Constitution or the Constitution of Illinois and determinations by the trial court will not be disturbed unless manifestly erroneous. (*People v. Odle* (1992), 151 Ill. 2d 168, 172.) "There is no entitlement to an evidentiary hearing on a post-conviction petition unless the allegations of a

defendant are supported by the trial record, accompanying affidavits, and make a substantial showing that a defendant's rights have been violated." *People v. Spreitzer* (1991), 143 Ill. 2d 210, 218.

## DISCUSSION

### I. Claims Relating to Ineffective Assistance of Counsel

The defendant's claims of ineffective assistance of counsel must be analyzed in light of *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. Under *Strickland,* the defendant must prove the following in order to establish that defense counsel's performance was constitutionally defective: (1) that "counsel's performance was deficient" in that it "fell below an objective standard of reasonableness," and (2) that the "deficient performance prejudiced the defense" such that the defendant was deprived of a fair trial whose result was reliable. (*Strickland,* 466 U.S. at 687-88, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) Further, *Strickland* holds that an ineffectiveness claim can often be disposed of upon a showing that a defendant suffered no prejudice from the claimed errors without deciding whether the errors constituted constitutionally ineffective assistance of counsel. (*Strickland,* 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.) Additionally, the *Strickland* standard requires "a reasonable probability of a different result, not merely a possibility." (*People v. Gacy* (1988), 125 Ill. 2d 117, 129-30.) Here, the trial court correctly determined that no prejudice resulted from the defendant's claimed errors.

### A. *Counsel's Failure to Investigate the Competency of James Dare and to Object to James Dare's Testimony*

Defendant first contends that James Dare was incompetent to testify, and had his trial counsel been prepared

to cross-examine Mr. Dare, his testimony would have been excluded. Admittedly, Mr. Dare was old and feeble. His testimony was weak. By paraphrasing Mr. Dare's testimony, his entire testimony can be summarized as follows:

> "I am James Dale Dare. I was born June 15, 1920. I lived in Dix, Illinois on Texico Road, with my wife and son, John David Dare. On the night of January 25, 1982, I went to bed about 10 p.m. My wife yelled for me to get up. I got up and went into the living room. My wife was in the living room, and she was with a colored man."

After eliciting this information, the prosecutor attempted to ask Mr. Dare six additional questions. Mr. Dare, however, failed to give an audible response or respond coherently to any of these questions. The prosecution ended its questioning, and defendant's attorney stated that she did not have any questions.

Defendant now points out that his trial counsel should have discovered that James Dare, at the time he testified, was a patient at the Danville Veterans Hospital. Additionally, Mr. Dare's sister was appointed his legal guardian in April 1984, and sometime before August 1985, Mr. Dare was declared incompetent. Defendant claims that if trial counsel had looked into Mr. Dare's competence to testify, these facts, if presented to the trial court, would have prevented Mr. Dare from testifying.

The trial court denied defendant's post-trial motion to strike Mr. Dare's testimony on the grounds of incompetence. On direct appeal, with full knowledge of all the above facts, this court concluded the trial judge did not abuse his discretion in concluding Mr. Dare was competent to testify. In addressing Mr. Dare's competency to testify, this court stated:

> "A witness is not rendered incompetent to testify by the appointment of a conservator to manage his property [ci-

tation], or by an adjudication of feeblemindedness [citations]. The defendant does not point to any statutory provision making Mr. Dare incompetent to testify; without some basis for that conclusion, we decline to assume that the appointment of a legal guardian for his person and estate would have had the same effect." *People v. Jones* (1988), 123 Ill. 2d 387, 406.

Even if we were to assume that Mr. Dare was incompetent to testify, defendant has not shown that he was prejudiced by it. Defendant, a black male, contends that Mr. Dare's testimony was extremely prejudicial because this was the only testimony which identified the perpetrator of the crimes as also being a black male. Thus, without this testimony the State would have been unable to identify the race and gender of the perpetrator as being the same as defendant's. Additionally, defendant claims that this evidence was critical given the small percentage of black males in southern Illinois who would have the same blood type as the perpetrator.

Race and gender, however, were not the linchpins of the case. The other evidence overwhelming pointed to the defendant as the perpetrator of the crimes. Quite apart from defendant's race and gender, the other evidence showed that: (1) defendant's blood type was found in the Dares' residence; (2) defendant's finger was cut; (3) Dorothy Lacey's residence had been burglarized two nights prior to the Dares'; (4) a butcher knife which was stolen from Lacey was found in the Dares' kitchen sink; (5) additional items which had been stolen from Lacey were found in the back seat of defendant's car; (6) the day after the murder and attempted murder of Mr. and Mrs. Dare, defendant sold the Dares' television at a Decatur auction house; (7) a blood-soaked stocking cap was found in defendant's house; (8) defendant's jacket was bloodstained; and (9) Caucasian hairs were found in

defendant's car with characteristics similar to hair samples taken from Mr. and Mrs. Dare.

The trial court determined that the alleged errors in the handling of the James Dare testimony did not constitute ineffective assistance of counsel. This determination will only be set aside if it was manifestly erroneous. (*People v. Odle* (1992), 151 Ill. 2d 168, 172.) In order to satisfy the second prong of *Strickland*, which is the prejudice requirement, it must be shown that but for the alleged errors, there is a reasonable probability that the result of the trial would have been different. Given the compelling nature of the other evidence against defendant, no such showing has been made.

Defendant also contends that even if Mr. Dare's testimony added nothing to the State's case, the mere appearance of Mr. Dare on the witness stand was prejudicial since it had to evoke sympathy in the jury. We disagree. The same argument could be made relative to the calling of any victim of a serious crime. That is an insufficient reason to bar the witness' testimony. The mere fact that the victim of a crime is in a pitiful condition is not a basis for the exclusion of the victim as a witness.

## B. *Alleged Coaching of James Dare*

Defendant claims that Mr. Dare was being coached by someone in the courtroom during his testimony, and that he received ineffective assistance of counsel due to his counsel's failure to object to this coaching. The sole basis for concluding that Mr. Dare was being coached is one paragraph in a 1990 affidavit by defendant's trial attorney to events which allegedly occurred five years previously in 1985. The issue of coaching is raised in the affidavit as follows:

"Mr. Dare had to be escorted to the witness stand. He could barely speak. He would answer a question very

slowly with minutes delay between a question and his response. Almost immediately it became apparent to me that Mr. Dare was being coached by someone who was sitting in the courtroom. I then changed my position in the courtroom and stood directly in front of Mr. Dare. At that point, Mr. Dare stopped talking and became unresponsive to the remainder of the State's questioning."

Defendant also asserts that the trial judge, in denying a post-conviction evidentiary hearing on this issue, improperly rejected the affidavit by substituting his own recollection of the events surrounding the trial testimony of Mr. Dare. In order to be entitled to an evidentiary hearing on a post-conviction petition, a defendant's allegations, in addition to being supported by accompanying affidavits, must also be supported by the trial record, and there must be a substantial showing that the defendant's rights have been violated. *People v. Spreitzer* (1991), 143 Ill. 2d 210, 218.

We have already concluded that due to the overwhelming weight of the evidence defendant has failed to show that absent Mr. Dare's testimony there exists a reasonable probability that the result of the trial would have been different. Since defendant was not prejudiced by Mr. Dare's testimony, the mere alleged coaching of Mr. Dare, in and of itself, cannot constitute prejudice. Thus, defendant has failed to show that he received ineffective assistance of counsel.

Moreover, the mere allegation of coaching constitutes nothing more than unsubstantiated opinion. Affiant observed no coaching in fact. A review of the record fails to support the conclusion that any coaching occurred. Since the only support for concluding that Mr. Dare was being coached is derived from the excerpted portion of the entirely conclusory affidavit listed above, the trial judge properly denied defendant an evidentiary hearing on this issue.

## C. *Ineffective-Assistance Claims Raised in Defendant's Pro Se Petition*

Three additional claims of ineffective assistance of counsel were raised by defendant in his *pro se* post-conviction petition. None of these claims have merit. The first of these claims is that his trial counsel failed to investigate whether Glenda Jackson was the informant whose information resulted in the State's obtaining a search warrant for defendant's car. Defendant obtained an affidavit from Glenda Jackson in July 1986 stating that she was not the individual who provided information to the State. Thus, defendant claims that the search of his car was invalid and evidence gathered from this search should have been suppressed. The State, however, claimed that Glenda Jackson did in fact provide information to it regarding the defendant. This issue has been waived. The facts regarding Glenda Jackson's denial of being a State informant were available prior to defendant's direct appeal. It is well established that issues which could have been raised on appeal, but were not, are deemed waived for subsequent appeals. (*People v. Gaines* (1984), 105 Ill. 2d 79, 87-88.) Regardless of defendant's waiver, the record reveals that defendant's trial counsel was aware that Jackson denied being an informant. The decision whether or not to call certain witnesses is a matter of trial strategy. Allegations arising from matters of judgment or trial strategy will not support a claim of ineffective representation. Defendant's trial counsel had talked to Jackson and decided not to call her as a witness. Thus, defendant's counsel was in the best position to determine both the truthfulness of Jackson's statements and her potential effectiveness as a witness. Trial counsel's decision, after interviewing Jackson, not to conduct a further investigation into Jackson's denial of being a State informant, was a strategic deci-

sion and does not support defendant's ineffective-assistance claim.

The second claim raised in defendant's *pro se* petition is that his trial counsel erred by failing to object to forensic testimony that there was a bloody gloveprint on defendant's car door. Defendant claims that he had no notice of this evidence and that it was highly prejudicial since a second bloody gloveprint was found in the Dares' residence. By taking these two gloveprints together, defendant contends, this evidence corroborates the State's theory that defendant's finger was cut during the attack upon the Dares. This issue has also been waived, as it is based upon evidence appearing in the record at the time of defendant's direct appeal, but which was not raised. Again, regardless of waiver, defendant has failed to show that he received ineffective assistance of counsel. The only testimony regarding the bloody gloveprint came from an expert for the State. This expert testified that the gloveprint found on defendant's car did not match the gloveprint found in the Dares' residence, nor did it match the gloves taken from defendant's car. Based upon the limited impact of this evidence, defendant has failed to show that absent this evidence there is a reasonable probability that the result of the trial would have been different. Thus, defendant has failed to show that he received ineffective assistance of counsel.

The third and final issue raised in defendant's *pro se* petition is that he received ineffective assistance of counsel due to his counsel's failure to object to, and to conduct an independent investigation into, the State's evidence indicating that defendant's blood type was the same as the blood type found at the crime scene. Defendant argues that linking defendant's blood type to the blood type found in the Dares' residence was critical to the State's case. This issue, just as the previous two issues raised in defendant's *pro se* petition, has been

waived, as it is also based upon evidence appearing in the record at the time of defendant's direct appeal, but not raised. Additionally, defendant has failed to show that he was prejudiced by trial counsel's actions. Counsel was aware of the expert's testimony, and referred to this testimony in closing arguments. Defense counsel's decision not to challenge the blood test results was a strategic decision. An ineffective challenge to this evidence might have resulted in weakening the credibility of the defense and thus bolstered the State's case. If this would have happened, in place of the current argument, defendant might now be arguing that he received ineffective assistance due to the challenging of the evidence. Defendant has failed to show that there is a reasonable probability that an investigation into the blood test evidence would have resulted in a different result at trial. Thus, defendant has failed to establish that he received ineffective assistance of counsel.

## II. Claim of Jury Harassment

Defendant claims that during his trial the jurors, while sequestered at their hotel, came in contact with someone they perceived to be connected to the defendant and were harassed by this individual. Defendant argues that the trial judge improperly denied his request for a post-conviction evidentiary hearing on this issue, and due to trial counsel's ineffectiveness, a record has not been fully established upon this issue. This issue has been waived, as it was not raised on direct appeal.

The first time the issue of jury harassment was raised by the defendant was during the presentencing conference. Defense counsel claimed that she had been told by the judge that the jury had been harassed by someone the jury believed to be a defense witness. Similar claims were made two additional times, one more time prior to sentencing, and the final time in a post-

trial motion. Each time this issue was raised, the trial judge flatly denied that any conversation regarding jury harassment took place between himself and defense counsel, and he stated that defense counsel was making this issue up out of thin air. Defendant offered neither the trial court nor this court affidavits or other proof in support of his claim of jury harassment. Nevertheless, defendant claims an evidentiary hearing is required because the trial judge needs to testify as to whether he has any knowledge on the issue of jury harassment. The trial record fails to support defendant's claim that jury harassment is a real issue since: (1) the trial judge consistently stated on the record that he had no knowledge of any jury harassment; (2) the trial judge denied that he told defense counsel that harassment had taken place; and (3) the defendant failed to offer any affidavits in support of his position. The trial court properly denied defendant's request for an evidentiary hearing. *People v. Spreitzer* (1991), 143 Ill. 2d 210, 218.

Defendant's contention that he received ineffective assistance of counsel due to an inadequate record being made on the issue of jury harassment also lacks merit. The record reveals that defense counsel raised the question of jury harassment three separate times before the trial judge but without any factual supporting basis.

### III. Denial of Request for Copies of Laboratory Notes

Defendant claims that the trial judge, in ruling on his petition for post-conviction relief, erred in denying his request for copies of the lab notes taken by the State's expert while examining the blood samples. According to defendant, he needs these notes in order to determine whether he was unduly prejudiced by the lack of defense experts. In denying defendant's post-conviction petition, the trial judge stated that since an evidentiary hearing was not going to be held, there was no need for the

State to produce the lab notes. Defense counsel admitted that the notes were requested for potential use at the evidentiary hearing. Since we have affirmed the trial court's conclusion that the defendant has failed to make a sufficient showing to warrant an evidentiary hearing, we likewise affirm the denial of the discovery request.

## IV. Constitutionality of the Death Penalty

Defendant argues that the Illinois death penalty statute is unconstitutional because it requires the imposition of death where there are one or more aggravating factors present and there are no mitigating factors sufficient to preclude the imposition of the death penalty. This argument has been previously addressed and rejected by this court. (See *People v. Bean* (1990), 137 Ill. 2d 65, 138-40.) Defendant fails to persuade us to reconsider this court's prior holdings.

## CONCLUSION

For the above reasons, we affirm the judgment of the circuit court. The clerk of this court is directed to enter an order setting Wednesday, November 10, 1993, as the date on which sentence of death, entered in the circuit court of Jefferson County, is to be carried out. Defendant shall be executed in the manner provided by law. (Ill. Rev. Stat. 1991, ch. 38, par. 119—5.) The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution where the defendant is now confined.

*Affirmed.*