NOTICE

Decision filed 03/30/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 230041-U

NO. 5-23-0041

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 11-CF-1330 |
| | ) | |
| DENNIS E. DAVIS, | ) | Honorable |
| | ) | Mark S. Goodwin, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justices Moore[*] and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court properly denied the defendant relief following the evidentiary hearing, as the defendant failed to establish ineffective assistance of trial counsel, a violation of *Brady* or Illinois Supreme Court Rule 412, or prosecutorial misconduct. We further grant the defendant the opportunity to file an initial petition under the Post-Conviction hearing Act.

¶ 2    The defendant, Dennis E. Davis, appeals the trial court's September 29, 2022, order denying his amended postconviction petition following a combined *Krankel* and third-stage evidentiary hearing. For the following reasons, we affirm.

_____

[*]Justice Moore fully participated in the decision prior to his retirement. See *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6 (1992).

1

¶ 3                                    I. BACKGROUND

¶ 4     On September 3, 2011, at approximately 11:30 p.m., at least two men fired multiple shots into and around the home of Joel Shoulder, located at 1502 North Church Street in Decatur. The attack killed 17-year-old Mishayra Wheeler and injured several others. Approximately 18 minutes following the shooting, on Eldorado Street, a Macon County Sheriff's deputy stopped the defendant's vehicle and arrested him for driving with a revoked license. Witnesses' descriptions of the shooters differed from the defendant's appearance at the traffic stop. Nonetheless, on September 14, 2011, the defendant was arrested in connection with the shooting. Prosecutors charged him the same day with four counts of murder and three counts of attempted murder. Also arrested was Roderick Dickerson, the defendant's alleged accomplice, whom a jury would acquit in a separate trial.

¶ 5     At his trial, the defendant was represented by attorney Steve Jones. During the proceedings, the State presented the testimony of Dickerson's adoptive brother, Colten Green. Green relayed to the jury his belief that the defendant, along with others, were plotting revenge for the earlier murder of Marvin Dickerson, Dickerson's cousin. Per Green, "any Cunningham" was a legitimate target of the men's vendetta. Green recounted how, immediately following the shooting, the defendant needed to "get out of Dodge." When pressed as to why the defendant had to flee, Green conceded that it was "because he just killed somebody." This answer drew an objection from Jones, which the trial court sustained.

¶ 6     The State relied additionally on the testimony of Demariel Cunningham. Cunningham swore that he was hiding inside of Shoulder's home on the night of the shooting, as he was wanted by police in connection with the earlier mentioned murder of Marvin Dickerson. Cunningham testified that, from the living room, he looked outside a large picture window and witnessed the

2

defendant and another individual approaching Shoulder's house, armed. These men fired their weapons toward the house, causing Cunningham to drop to the floor as a bullet passed near his head.

¶ 7 The defense presented alibi testimony from Vickie Reader, who recollected that the defendant had left their shared home in Macomb for Decatur between 8:00 and 9:00 p.m. on the night of the shooting. The defendant then returned some time prior to 7:00 a.m. the next morning, September 4, 2011. Reader's testimony formed part of a larger defense strategy focused on the defendant's appearance on the night of the shooting, the narrow timeframe between the shooting and the defendant's traffic stop, and the inconsistency and general unreliability of the State's witnesses. The jury convicted the defendant, and the trial court sentenced him to an aggregate of 100 years in prison.

¶ 8 On direct appeal, while the Fourth District affirmed the defendant's conviction, it remanded the case for a preliminary *Krankel* inquiry into the defendant's *pro se* claims of ineffective assistance of counsel. *People v. Davis*, 2016 IL App (4th) 140575-U, ¶ 59. On remand, the trial court denied relief, observing that—while Jones had made certain missteps in his representation—none so prejudiced the defendant as to render counsel ineffective. The defendant appealed this denial, and again the Fourth District remanded, observing that the trial court improperly applied the two-pronged *Strickland* test for ineffective assistance of counsel, rather than the appropriate first-stage *Krankel* standard of "possible neglect." *People v. Davis*, 2018 IL App (4th) 170919-U, ¶¶ 33, 39. The reviewing court concluded that the defendant had indeed demonstrated possible neglect and remanded the matter for an evidentiary hearing. *Id.* ¶ 45.

¶ 9 On second remand, which is the subject of this appeal, the defendant's counsel filed an "amended postconviction petition," despite the defendant never having filed an initial

3

postconviction petition. This petition alleged an actual innocence claim based on Cunningham's supposed perjury at trial regarding his presence at Shoulder's house during the shooting. It asserted as well various claims of ineffective assistance of trial counsel arising from Jones's failure to call certain witnesses, challenge identifications, and object to more of Colten Green's testimony. Based on the remand's direction and the filing of the amended postconviction petition, the trial court conducted an evidentiary hearing on both issues on September 29, 2022.

¶ 10   At the evidentiary hearing, the defendant presented testimony from Keneisha Cox, Joel Shoulder, Demariel Cunningham, Gregory Lewis, and Raquel Buchanan. Cox testified that the defendant was with her on the night of the shooting from approximately 11:20 p.m., and that he stayed in her company for 10 to 15 minutes. Shoulder stated that Cunningham was not at his house when the shooting occurred, and denied that the defendant was one of the assailants. Cunningham recanted his trial testimony, stating that he lied in order to curry favor with the State, and that he was not present when the shooting took place. Lewis likewise testified that Cunningham was not at Shoulder's house, and claimed that he identified the defendant in a photographic lineup only after police asked him whether he knew the defendant, and not because he recognized him as the shooter. Buchanan testified that she interacted with the defendant after the shooting occurred, and that he was acting normally.

¶ 11   The State responded with testimony from trial counsel Steve Jones, Detective Joe Patton, and Assistant State's Attorney (ASA) Tamara Wagoner. Jones explained his strategic reasons for not calling certain witnesses amid uncertainty as to their reliability. Detective Patton related that Shoulder had previously disclosed that Cunningham was indeed at Shoulder's house when the shooting occurred, and that he had written a report reflecting as much. Finally, ASA Wagoner testified that Cunningham had approached the State voluntarily, denied that the State extended any

4

deal to Cunningham, and affirmed that the State disclosed to the defense Shoulder's initial contention that Cunningham was at his house via Detective Patton's report. ASA Wagoner, however, conceded that the State likely declined to formally disclose Shoulder's eve of trial statement recanting his initial statement because the State was not planning on calling Shoulder as a witness at trial.

¶ 12    The trial court rejected the defendant's actual innocence claim as reliant on an unreliable recantation. It concluded that it was reasonable trial strategy for Jones not to call Cox or Buchanan as trial witnesses, as well as to forego challenging witnesses' identifications of the defendant as a shooter. The trial court likewise determined that Jones's decision not to object to additional aspects of Green's testimony was a legitimate strategic decision, meant to diminish the importance of the statements. It also concluded that it was reasonable trial strategy to refrain from calling Lewis and Shoulder as witnesses, as these men had proven to be unreliable and unpredictable in their statements over the course of the investigation.

¶ 13    Following the denial, the defendant moved to reconsider, arguing for the first time that he was entitled to Shoulder's eve of trial statement, and that the State had violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose said statement. On January 17, 2023, at the hearing on the motion to reconsider, Jones testified that he did not recall receiving the trial-eve statement from the State, but that he would still have hesitated to call Shoulder even if he had known of it. The trial court found that, while there had been a lack of disclosure by the State, this resulted in no material breach or prejudice, as Shoulder lacked credibility. Accordingly, it denied the defendant's motion to reconsider. This timely appeal followed. Additional facts will be presented as necessary in the analysis section of this order.

5

¶ 14                                        II. ANALYSIS

¶ 15    On appeal, the defendant asserts that the trial court erred in denying him any relief, arguing that trial counsel was ineffective for failing to call Keneisha Cox as an alibi witness; failing to object, move to strike, or request limiting instructions regarding portions of Colten Green's testimony; and failing to call Joel Shoulder to impeach Demariel Cunningham. He also contends that the State violated the requirements of *Brady* and Illinois Supreme Court Rule 412 (eff. Mar. 1, 2001) by (1) failing to disclose to the defense Shoulder's pre-trial statement that Cunningham was not at Shoulder's house when the shooting occurred and (2) failing to disclose a comprehensive summary of its initial interview with Shoulder. The defendant further contends that the State engaged in prosecutorial misconduct by calling Cunningham as a trial witness, despite knowing of evidence that could contradict his testimony. Finally, the defendant asserts that the confusion following the appellate court's remand deprived him of the right to file a postconviction petition, and therefore, this court should recognize that he retains the ability to file an initial petition under the Postconviction Hearing Act, should he choose to do so. Due to its procedural nature, we will address this latter argument first.

¶ 16    This appeal arises from a combined postconviction and *Krankel* evidentiary hearing. The standard of review for either proceeding is manifest error. *People v. Childress*, 191 Ill. 2d 168, 174 (2000) (standard for postconviction petition), *People v. Jackson*, 2020 IL 124112 ¶ 98 (2020) (standard for *Krankel* motion decided on the merits). "Manifest error is error that is clearly evident, plain, and indisputable." *Id.* We also hereby grant the defendant's motion to cite *People v. Wilhelm*, 2025 IL App (5th) 240389-U as additional, persuasive authority under Illinois Supreme Court Rule 23(e)(1) (eff. June 3, 2025), and have considered this case, along with the caselaw provided by both parties, in conducting our analysis.

6

¶ 17                                    A. Postconviction Petition

¶ 18     The defendant argues that, on remand, his counsel unnecessarily and erroneously filed an amended petition for postconviction relief. The defendant argues that the circuit court was directed to conduct an evidentiary hearing regarding his ineffective assistance of trial counsel claims thus rendering the filing and hearing on the amended postconviction petition inconsistent with the appellate court order. As a result, the defendant states that counsel improperly used his singular guaranteed opportunity to file a postconviction petition and requests this court to grant the defendant the right to file an initial petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)), should he choose to do so.

¶ 19     Our supreme court has held that every imprisoned defendant is entitled to "one complete opportunity to show a substantial denial of his constitutional rights." *People v. Logan*, 72 Ill. 2d 358, 370 (1978). This court has likewise recognized that where a defendant has been denied that opportunity through no fault of his own, the procedural right should be restored. See *People v. Little*, 2012 IL App (5th) 100547, ¶ 21.

¶ 20     Here, we conclude that the record does not demonstrate that the defendant received a complete opportunity to show a substantial denial of his constitutional rights. The Act establishes specific procedural stages (*Little*, 2012 IL App (5th) 100547, ¶ 12), and Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) requires postconviction counsel to perform certain tasks. These tasks include ascertaining the defendant's contentions of deprivation of constitutional rights and making any amendments to the *pro se* petition that may be necessary for an adequate presentation of the petitioner's claims. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). In this case, however, it appears that the amended postconviction petition was filed in response to the remand regarding the defendant's ineffective assistance of counsel claims. The defendant did not have an opportunity to

file a *pro se* petition from which counsel could derive an adequate presentation of any and all potential claims that the defendant may have asserted.

¶ 21    Pursuant to Illinois Supreme Court Rule 615(b)(2) (eff. Jan. 1, 1967), this court may "set aside, affirm, or modify any or all of the proceedings subsequent to or dependent upon the judgment or order from which the appeal is taken." Although the issues addressed at the evidentiary hearing will be barred under the doctrine of *res judicata*, we conclude that the defendant is entitled, if he so chooses within the statutory timeframe of the Act, to file an initial postconviction petition raising any substantial denial of his constitutional rights not previously addressed.

¶ 22                            B. Ineffective Assistance of Trial Counsel

¶ 23    The defendant's first of several arguments that he received ineffective assistance of trial counsel centers on Jones declining to call Keneisha Cox at trial as an alibi witness. Cox, the defendant contends, would have testified that the defendant was at her home, located near the intersection of Clay Street and 16th Street, at around 11:20 p.m. on the night of the shooting.

¶ 24    In determining whether a defense counsel has provided ineffective assistance, we apply the two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The first prong asks whether counsel's performance was so deficient as to fall below an objective standard of reasonableness, and the second prong asks whether the deficient performance deprived the defendant of a fair trial with a reliable result. *People v. Jones*, 155 Ill. 2d 357, 364 (1993). *Strickland* further "holds that an ineffectiveness claim can often be disposed upon a showing that a defendant suffered no prejudice from the claimed errors without deciding whether the errors constituted constitutionally ineffective assistance of counsel." *Id.* (citing *Strickland*, 466 U.S. at

8

697). For such prejudice, there must be "a reasonable probability of a different result, not merely a possibility." *People v. Gacy*, 125 Ill. 2d 117, 129-30 (1988).

¶ 25    In addition, there exists a well-established principle that "the decision whether to call a certain witness for the defense is a matter of trial strategy, left to the discretion of counsel after consultation with the defendant." *People v. Peterson*, 2017 IL 120331, ¶ 80 (2017). Therefore, such decisions do not ordinarily support a claim of ineffective assistance of counsel. *Id.* Defense counsel's mere mistake or error in judgment will not, by itself, amount to ineffective assistance of counsel. *Id.* "Only if counsel's trial strategy is so unsound that he entirely fails to conduct meaningful adversarial testing of the State's case will ineffective assistance of counsel be found." *People v. Perry*, 224 Ill. 2d 312, 355 (2007).

¶ 26    Here, Jones explained that, rather than pursue Cox's testimony, he preferred a strategy centered on the defendant being "pulled over by a Macon County sheriff's deputy a few minutes after the shooting allegedly occurred." During this traffic stop, Jones noted, the defendant "was clean shaven," and "eyewitness testimony at the shooting [said] that [the shooter] looked totally different than that." Jones also noted that he was "uncertain as to how reliable [Cox] might be if called to testify."

¶ 27    Jones's trepidation over calling Cox as a witness was well grounded. Had Cox testified on the defendant's behalf, the State could have sought to introduce Cox's 2013 conviction for attempted obstruction of justice under section 31-4(a)(1) of the Criminal Code of 2012 (720 ILCS 5/31-4(a)(1) (West 2012)), destruction of evidence. The defendant states that Cox's conviction is irrelevant, arguing that it would not qualify as a crime of dishonesty, however, it is plausible that the trial judge may have admitted Cox's conviction over the defendant's objection. If admitted, the jury may have concluded that Cox's testimony was unreliable at best, and deceitful at worst.

9

¶ 28    Even if the jury uncritically believed Cox's testimony, it provides the defendant with only an imperfect alibi. Per Cox's affidavit, the defendant arrived at her residence "around 11:20 or 11:25 p.m." After talking with Cox for "a little bit," the defendant left in a car. The parties stipulated that the shooting took place at approximately 11:30 p.m., and Cox's residence is close enough to the scene of the shooting that the defendant could have indeed visited her at around 11:20 p.m. and still have been present on Church Street when the crime took place. Thus, putting Cox on the witness stand presented Jones with a high-risk, low-reward scenario which he declined to pursue. This is not the type of decision that is so deficient as to fall below the standard of objective reasonableness.

¶ 29    Accordingly, for these reasons, Jones's decision to forego presenting Cox's testimony falls within the wide latitude afforded trial counsel to pursue reasonable trial strategy and does not constitute ineffective assistance of counsel. Thus, the defendant has failed to meet the first prong of *Strickland* and this claim fails.

¶ 30    The defendant next argues that Jones rendered ineffective assistance of counsel by failing to object, move to strike, and/or request a limiting instruction for several aspects of Colten Green's testimony. Specifically, the defendant takes exception to Green testifying that the defendant had been in jail, his statement that the defendant had "just killed somebody," and his speculative statement that the shooting was motivated by a desire for revenge. As set forth in the prior section, we review this claim of ineffective assistance of counsel under the two-pronged standard set forth in *Strickland. Strickland*, 466 U.S. at 668.

¶ 31    Regarding these claims of error, the defendant fails to overcome the wide latitude allowed attorneys for trial strategy. We note that "defense counsel's failure to object to trial testimony may be a matter of [trial] strategy and does not necessarily establish substandard performance." *People*

10

*v. Graham*, 206 Ill. 2d 465, 478-79 (2003). Concerning Green's statement that the defendant had "just killed somebody" and his testimony concerning the shooting's motivation, Jones testified that he "made a split-second decision on whether I was going to object, move to strike, or ask for a limiting instruction." Ultimately, Jones decided to "let it go and not draw any further attention to [Green's statements]." A decision to let offending testimony pass, without drawing further attention to it, has been recognized by our supreme court as a legitimate exercise of trial strategy. See *People v. Evans*, 209 Ill. 2d 194, 221 (2004). Moreover, Jones *did* object to Green's testimony that the defendant had "just killed somebody." The trial court sustained this objection, and the jury is presumed to follow the trial court's instructions to disregard matters excluded by sustained objections. *People v. Sims*, 2019 IL App (3d) 170417, ¶ 33 (2019). Considering this presumption, it is unlikely that merely moving to strike the offending testimony would have changed the outcome. Doing so would have exposed the testimony to the jury once more. Under these circumstances, the failure to move to strike does not transform Jones's performance into constitutionally deficient representation under *Strickland*.

¶ 32    The State cites our supreme court's decision in *People v. Towns*, 157 Ill. 2d 90 (1993), a case which we find to be instructive here. In another first degree murder trial, a police officer witness twice referenced the defendant's prior incarceration; the second time contrary to the trial court's direct instructions. *Id.* at 105. On appeal, the defendant argued that trial counsel rendered ineffective assistance by failing to seek exclusion of the evidence. *Id.* at 105-06. Our supreme court concluded that such a claim must fail, reasoning that "[because such] statements neither were substantively used nor were they ever referred to again, defendant has failed to show that he suffered any prejudice." *Id.* at 107. Similarly, here, the witness made only a brief, passing reference to the defendant's prior incarceration. This reference was not invited by the State's question, nor

11

did the State ever refer to the remarks at any other points of the proceeding. In light of the substantial similarities between this case and *Towns*, plus the notable difference that the witness in this case referred to the defendant's incarceration only once, we are unpersuaded by the defendant's attempt to distinguish the present case from *Towns*.

¶ 33    Accordingly, we find that Jones's failure to object to testimony regarding the defendant's prior incarceration was a reasonable exercise of trial strategy and, in any event, did not prejudice the defendant to the level contemplated by the *Strickland* standard.

¶ 34    Finally, the defendant argues that Jones rendered ineffective assistance of counsel by failing to object to Green's hearsay testimony. While the parties argue whether Green's speculative testimony fits under the co-conspirator exception to the hearsay rule, we conclude that this portion of Green's statement does not constitute hearsay at all.

¶ 35    The contested testimony is as follows:

> Q: "What did you know about where Mr. Davis, Mr. Dickerson, and Mr. Hubbert were going from the house on Wood Street?"
> A: "Well, after—after my little cousin got killed—um—it was really like a war. So any time it was—it was a getting together like that, I knew it was going to be some kind of drama or something serious that's going to take [*sic*] happen. I mean, that was going to happen. So, I knew that when they were together, and at that certain time, I knew it was going to be—they were going to do something as far as this most likely. I mean, I don't want to—most likely to harm somebody."

¶ 36    "Hearsay is defined as testimony of an out-of-court *statement* offered to establish the truth of the matter asserted therein, and resting for its value upon the credibility of the out-of-court asserter." (Internal quotation marks omitted.) *People v. Evans*, 373 Ill. App. 3d 948, 964 (2007) (emphasis added). The definition of "statement" includes oral or written statements, as well as nonverbal conduct that the actor intends to be an assertion. Ill. R. Evid. 801(a) (eff. Oct. 15, 2015). Green does not recount any out-of-court statement. He describes his own perceptions and inferences about what he believed the group intended to do. He did not repeat or summarize the

12

words of any specific person or persons. Accordingly, Green's testimony is best characterized as lay opinion testimony. Lay opinion testimony is proper if it is (a) rationally based on the witness's perception, (b) helpful in understanding the witness's testimony or in determining a fact at issue, and (c) not based on scientific, technical, or other specialized knowledge. Ill. R. Evid. 701 (eff. Jan. 1, 2011). Green's testimony satisfies these requirements. While generally a witness may not "express an opinion or draw inferences from the facts," a lay witness may nonetheless "express an opinion based upon his or her observations where it is difficult to reproduce for the jury the totality of the conditions perceived[,] and where the opinion given is one that persons in general are capable of making and understanding." *People v. Crump*, 319 Ill. App. 3d 538, 542 (2001). In other words, a lay witness may offer an opinion when it merely summarizes observations that cannot easily be conveyed piecemeal. Such is the case here, given that Green was intimately familiar with the defendant, and was with him the entire day that the shooting took place.

¶ 37   Because Green's testimony was admissible as lay witness testimony, the defendant cannot establish either deficient performance or resulting prejudice. Accordingly, we find that the trial court's rejection of the defendant's claim of ineffective assistance of trial counsel was not manifest error.

¶ 38                      C. *Brady* and Illinois Supreme Court Rule 412

¶ 39   The defendant next argues that the State violated *Brady*, 373 U.S. 83 (1963), when it failed to disclose that Joel Shoulder, on the eve of trial, told prosecutors that Cunningham was not present at Shoulder's house during the shooting, despite saying otherwise in February 2013. The defendant similarly argues that the State violated Illinois Supreme Court Rule 412 (eff. Mar. 1, 2001), by tendering the defense an inaccurate report of Shoulder's February 2013 interview. Alternatively,

13

the defendant argues that counsel was ineffective for failing to call Shoulder as a witness to impeach Cunningham's trial testimony.

¶ 40    The defendant first raised the *Brady* argument in his motion to reconsider, and he first raised the Rule 412 argument on appeal. Generally, a defendant forfeits an argument if he raises it for the first time in a motion to reconsider or on appeal. *People v. Ross*, 2017 IL App (4th) 170121, ¶ 32, *People v. Krinitsky*, 2012 IL App (1st) 120016, ¶ 26. However, "forfeiture is a limitation on the parties and not the reviewing court, and we may overlook forfeiture where necessary to obtain a just result." (Internal quotation marks omitted.) *People v. Smith*, 2017 IL App (1st) 143728, ¶ 45. The parties have extensively briefed both issues, and we may efficiently decide both claims. Accordingly, we conclude that the interests of justice permit us to decide both the *Brady* and the Rule 412 claims on their merits.

¶ 41                                1. *Brady* Claim

¶ 42    We address first whether the State's nondisclosure amounts to a *Brady* violation. "The State has a constitutional obligation to disclose evidence that is both favorable to the accused and 'material either to guilt or to punishment.' " *People v. Burt*, 205 Ill. 2d 28, 46-47 (2001) (quoting *Brady*, 373 U.S. at 87). "Evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Burt*, 205 Ill. 2d at 47 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). "Therefore, in order to succeed in a *Brady* claim, the defendant must show that: (1) the evidence is favorable to the defendant because it is either exculpatory or impeaching; (2) the evidence was either wilfully or inadvertently suppressed by the State; and (3) prejudice ensued to the defendant." *Id.* A *Brady* claim does not present a purely legal question. Rather, "it requires applying established law to the

14

facts, including those elicited at the evidentiary hearing." *People v. Beaman*, 229 Ill. 2d 56, 73 (2008). Accordingly, we review the trial court's ruling for manifest error. *Id.*

¶ 43    Here, we agree with the State that no *Brady* violation occurred here when the evidence in question was already known to the defense. This principle is consistent with *Brady*'s purpose of "eliminat[ing] any asymmetry of information between the State and the accused." *People v. Gomez-Ramirez*, 2021 IL App (3d) 200121, ¶ 19. The record reflects that Detective Patton and ASA Wagoner met with Shoulder at the Danville Correctional Center in February 2013. According to Detective Patton's report, which was tendered in discovery, Shoulder initially failed to mention Cunningham as being present. After further discussion, however, Shoulder advised that Cunningham was at his house when the shooting took place. Several months later, on September 3, 2013, Shoulder authored a letter stating, "L [(Cunningham)] trying two [*sic*] say he was in my house and seen you. I said same sh*t no he was not." Defense counsel possessed this letter prior to trial, as the State had disclosed it as part of its Rule 413(b) disclosures.

¶ 44    Thus, by the time of trial, the defense was aware that Shoulder had provided inconsistent accounts regarding Cunningham's presence. The February 2013 police report disclosed that Shoulder ultimately stated Cunningham was present, and the September 2013 letter disclosed that Shoulder claimed Cunningham was not present. In other words, the defense was aware of both sides of Shoulder's inconsistency. *Brady* does not require the State to disclose information already in the defendant's possession, nor does it obligate the State to reiterate what the defense already knows. See *People v. Smith*, 46 Ill. 2d 430, 433 (1970).

¶ 45    The defendant argues that, nevertheless, the State withheld evidence by failing to disclose that, on the eve of trial, Shoulder again indicated he would not testify that Cunningham was present. That trial-eve statement was cumulative of Shoulder's September 2013 letter, which

15

defense counsel possessed before trial. It did not introduce a new theory or previously unknown position. Rather, it reflected Shoulder's continued inconsistency. Where the defense is already aware of the substance of the information, no asymmetry exists, and thus, no *Brady* violation occurs.

¶ 46 Moreover, even assuming, *arguendo*, that the State should have expressly disclosed Shoulder's trial-eve recantation, this does not make the evidence material. The jury would have been confronted with a witness who had made conflicting statements about a central fact. Such impeachment would have added to an already contested credibility dispute. It does not undermine confidence in the verdict within the meaning of *Brady* and its progeny, particularly considering the evidence presented at trial identifying the defendant as a shooter and the extensive credibility issues already before the jury. Accordingly, the trial court did not commit manifest error in rejecting the defendant's *Brady* claim. Consequently, because no *Brady* violation occurred, the defendant cannot establish the prejudice necessary for a successful claim of ineffective assistance of counsel.

¶ 47                                         2. Rule 412 Claim

¶ 48 We next address the defendant's related claim under Illinois Supreme Court Rule 412 (eff. Mar. 1, 2011). The defendant argues that the same conduct that supposedly violated *Brady* likewise violated this rule. We disagree.

¶ 49 Rule 412(a)(i) requires that the State disclose to defense counsel "memoranda containing substantially verbatim reports" of oral statements made by "persons whom the State plans to call as witnesses." Ill. S. Ct. R. 412(a)(i) (eff. Mar. 1, 2011). The duty to disclose is ongoing throughout the trial process. *People v. Harper*, 392 Ill. App. 3d 809, 821 (2009). The purpose of this rule is to prevent surprise, and to afford an opportunity to combat false testimony. *People v. Anderson*, 46

Ill. App. 3d 607, 614-15 (1977). "While compliance with the discovery requirements is mandatory, the failure to comply with these requirements does not require a reversal absent a showing of surprise or undue prejudice. The burden of showing surprise or prejudice is upon the defendant." *People v. Robinson*, 157 Ill. 2d 68, 78 (1993). We ordinarily review discovery rulings for abuse of discretion. Where, as here, the material facts are not disputed and the question is the application of the law to the facts, our review is *de novo*. See *People v. Sims*, 192 Ill. 2d 592, 615 (2000).

¶ 50    Here, as we noted previously, the defense was already aware that Shoulder had changed his story regarding whether Cunningham was present at the house when the shooting occurred. Accordingly, the defendant cannot show that the State's failure to disclose Shoulder's eve of trial statement resulted in any surprise. Similarly, the defendant cannot demonstrate that he suffered any prejudice from the State's failure to disclose the trial-eve conversation, for Shoulder revealed no information to the State that was not already contained in the September 2013 letter in the defendant's possession.

¶ 51    Likewise, the defendant cannot demonstrate that any surprise or prejudice resulted from the State's report of Shoulder's February 2013 interview. Once again, the defendant knew before trial that Shoulder was inconsistent regarding whether Cunningham was at his house on the night of the shooting. Trial counsel, moreover, testified that he already considered Shoulder to be an unreliable witness whom trial counsel feared he may need to impeach should he call Shoulder to testify at trial. In any event, Rule 412 requires the State to disclose oral statements made by a person whom it intends to call as a witness at trial, and the State indicated at the hearing that it did not intend to call Shoulder. Ill. S. Ct. R. 412(a)(i) (eff. Mar. 1, 2011).

¶ 52    Accordingly, because the defendant can neither demonstrate the surprise nor undue prejudice necessary to prompt a reversal, we find that the defendant's Rule 412 claim fails.

17

¶ 53          3. Ineffective Assistance for Failing to Call Shoulder

¶ 54    We briefly address the defendant's contention that Jones was ineffective for not calling Shoulder as a witness to impeach Cunningham's trial testimony. Here, trial counsel considered Shoulder to be an unreliable witness, whom he feared he may need to impeach should he call him to testify at trial. As we have explained, "the decision whether to call a certain witness for the defense is a matter of trial strategy, left to the discretion of counsel after consultation with the defendant." *Peterson*, 2017 IL 120331, ¶ 80 (2017). More pointedly, our supreme court has stated that "defense counsel need not call a witness if he reasonably believes that under the circumstances the individual's testimony is unreliable." *People v. Flores*, 128 Ill. 2d 66, 106 (1989). Considering Shoulder's inconsistent statements, along with the damaging impeachment potential these statements carried, we consider Jones's decision not to call Shoulder as a trial witness to be a reasonable exercise of trial strategy.

¶ 55    Thus, because trial counsel's decision not to call Shoulder as a trial witness was a reasonable exercise of trial strategy, the defendant cannot demonstrate ineffective assistance of counsel under the standard set forth in *Strickland*.

¶ 56                    D. Prosecutorial Misconduct

¶ 57    Finally, the defendant characterizes the State's decision to present Cunningham's testimony as prosecutorial misconduct because the State possessed information that cast doubt on the veracity of Cunningham's testimony. "The rule is well-established that the State's knowing use of perjured testimony to obtain a criminal conviction constitutes a violation of due process of law." *People v. Olinger*, 176 Ill. 2d 326, 345 (1997). "The same result obtains when the State,

18

although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 268 (1959). To challenge a conviction based on the State's use of perjured testimony, the defendant must show that the State knew that the testimony was false or that the State exhibited a lack of diligence while presenting the challenged testimony. *People v. Brown*, 169 Ill. 2d 94, 106 (1995). Our review is *de novo*. *People v. Wheeler*, 226 Ill. 2d 92, 121 (2007).

¶ 58 The defendant's argument fails at the threshold because the record does not establish that the State knowingly presented false testimony. The defendant merely contrasts Cunningham's testimony with Shoulder's pretrial statements and concludes that, because both cannot be true, Cunningham must be lying. We disagree. By the defendant's own admission, Cunningham consistently identified the defendant as one of the shooters. Cunningham was also consistent in his testimony that he was "lying low" at Shoulder's house when the shooting occurred. That Cunningham recanted years later does not alter our analysis. Such recantations are "inherently unreliable," and the record includes independent evidence consistent with Cunningham's original account. See *People v. Steidel*, 177 Ill. 2d 239, 260 (1997). Shoulder, by contrast, was inconsistent in his recounting of events, and defense counsel concluded that to present Shoulder as a witness would damage, rather than aid, the defendant's chances of acquittal. Defense counsel made this decision despite knowing—as we have established—that Shoulder had settled on a story that did not feature Cunningham as present at Shoulder's house when the shooting occurred.

¶ 59 The defendant contends that Cunningham could not have identified the defendant because crime-scene photographs show that the curtains in the living room of 1502 Church Street were drawn at the time of the shooting. Despite this characterization, Cunningham's identification testimony is not inconsistent with that evidence. A reasonable jury could conclude that Cunningham could have peered through the curtains without disturbing the mechanism by which

they are drawn or undrawn. Further, crime-scene photographs show openings in the curtains through which a person inside could see outside. Other photographs also show bullet holes through the window into the living room, which is consistent with Cunningham's testimony that he felt bullets pass by him as the shooting took place.

¶ 60    That Shoulder provided statements that were inconsistent with Cunningham's testimony does not demonstrate that the State knew that Cunningham's testimony was false; nor does it demonstrate a lack of diligence in assessing the truth or falsity of that testimony. At most, the record reflects conflicting accounts, the resolution of which was for the jury. Because the defendant cannot demonstrate the State's knowledge of falsity, nor indeed that the challenged testimony was false at all, no due process violation occurred, and the defendant's claim of prosecutorial misconduct fails.

¶ 61                                III. CONCLUSION

¶ 62    For the foregoing reasons, we conclude that the trial court properly denied the defendant relief following the evidentiary hearing, as the defendant failed to establish ineffective assistance of trial counsel, a violation of *Brady* or Illinois Supreme Court Rule 412, or prosecutorial misconduct. However, because the remand resulted in the filing of an amended postconviction petition without the defendant first having filed an initial petition, we further grant the defendant the opportunity to file an initial petition under the Post-Conviction Hearing Act.

¶ 63    Affirmed.